UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN T. TATUM,<br><br>    Plaintiff,<br><br>    v.<br><br>C. BUCKLEY, et al.,<br><br>    Defendants. | Case No. 11-cv-04864-WHO (PR)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS;**<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This is a federal civil rights action filed pursuant to 42 U.S.C. § 1983 by plaintiff Irvin Tatum, a pro se state prisoner. For the reasons stated herein, defendants' motion to dismiss is GRANTED in part and DENIED in part, and their motion for summary judgment is GRANTED. The Clerk will enter judgment in favor of all defendants as to all claims, and the close the file.

## DISCUSSION

**A.    Background**

Tatum alleges that defendants, staff at Pelican Bay State Prison, violated his Eighth Amendment rights by being deliberately indifferent to his safety when they refused to transfer him to a different prison, and his Fourteenth Amendment equal protection rights by refusing his transfer request while granting such requests to other, similarly-situated

prisoners. More specifically, he claims that (1) Buckley, a Classification Staff Representative for the California Department of Corrections and Rehabilitation ("CDCR"), violated his Eighth Amendment and equal protection rights by denying his request for a transfer to another prison; (2) Rush, a CDCR correctional counselor, violated his Eighth Amendment and equal protection rights when he recommended against transferring Tatum to another prison; and that (3) Smith, an associate warden, Perez, a correctional counselor, and Alkire, the Chief of Classification Services, also violated his Eighth Amendment and equal protection rights.

Here are the relevant facts. On June 2, 2010, while housed in Pelican Bay's Secured Housing Unit ("SHU"), Tatum appeared before the SHU classification committee. (Am. Compl. at 3.) This committee recommended that Tatum be moved to another prison based on concerns that he had enemies at Pelican Bay, and that he be held in the SHU pending transfer due to his "previous history with a disruptive group on the [general population] yard." (*Id.*, Ex. A.) On July 21, however, defendant Buckley denied the transfer, and, citing departmental needs, endorsed Tatum's return to general population. (*Id.*, Ex. B.) Tatum filed and exhausted an appeal regarding the denial of his transfer request, PBSP-10-02338. (*Id.*, Ex. E.)

According to Tatum, on September 5, 2010, the day he was transferred to general population, he was threatened with violence by two members of the "KUMI" gang. Tatum reported the incident to correctional staff. (Am. Compl. at 6.) In response, he was moved to the Administrative Segregation Unit ("ASU"). (*Id.*) While there, the Institutional Classification Committee ("ICC") recommended Tatum be transferred to another prison, against the recommendation of defendant Rush. (*Id.*, Ex. H.) When this recommendation was not endorsed, another ICC meeting was held by defendants Smith and Perez, who made a recommendation to release Tatum back into general population. (*Id.*, Ex. K.)

On June 10, 2011, while in general population, Tatum had an incident with a member of the KUMI gang, in which he was allegedly injured, and he was subsequently

2

moved to another housing unit within general population.  (Am. Compl. at 10–11.)

As discussed below, Alkire was not mentioned in any of Tatum's prison grievances.

Defendants move to dismiss and for summary judgment.

**B.      Motion to Dismiss**

Tatum contends that defendants violated his (1) Eighth Amendment rights by returning him to general population in 2011, and (2) equal protection rights by refusing to protect him from his enemies in general population while offering that protection to other similarly-situated inmates.  Defendants move to dismiss these claims because Tatum failed to exhaust his administrative remedies prior to filing this action.

Prisoners must properly exhaust their administrative remedies before filing suit in federal court.  "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and is no longer left to the discretion of the district court.  *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).  To exhaust properly administrative remedies in California state prisons, inmates must proceed through three levels of review, concluding with a Director's Level decision.   *See* Cal. Code Regs. tit. 15, § 3084.7.

Tatum filed four inmate appeals relating to his reassignment to general population and the denial of his transfer requests.  The first appeal, No. PBSP-11-02338, challenged defendant Buckley's (1) denial of Tatum's transfer request and (2) endorsement of his transfer back to general population.  (Mot. to Dismiss ("MTD"),[1] Townsend Decl. ¶ 9, Exs. A–F.)  These claims were for deliberate indifference, not a violation of equal protection. This appeal was exhausted on May 17, 2011.  (*Id.*, Lozano Decl. ¶ 8, Exs. A, B.)

---

[1] Defendants' filing is both a motion to dismiss and a motion for summary judgment, which, for reasons of simplicity, the Court refers to as "MTD."

3

1   The second appeal, No. PBSP-S-10-02984, was filed on September 7, 2010.  It
2   challenged Tatum's 2010 return to general population.  There is no record of a second or
3   third level review of this appeal.  (MTD, Townsend Decl. ¶ 11, Exs. A, D.)  This claim
4   was not exhausted.

5   The third appeal, No. PBSP-S-11-00716, was filed on February 23, 2011.   It
6   challenged Tatum's continued confinement in the ASU as recommended by defendant
7   Smith.  No equal protection issues were raised.  (*Id.* ¶ 12, Exs. A, E.)  This appeal was
8   exhausted administratively on July 7, 2011.  (*Id.*, Lozano Decl. ¶ 9, Exs. A, C.)  Tatum's
9   complaint does not raise issues about his confinement in the ASU (which was prompted by
10  safety concerns he himself raised), but rather is about the denials of his transfer requests
11  and return to general population.  Accordingly, this appeal is not relevant to Tatum's
12  lawsuit.

13  The fourth appeal, No. PBSP-11-01612, was filed on July 5, 2011.  It challenged
14  Rush's recommendation that he be returned to general population.  (*Id.*, Townsend Decl.
15  ¶ 13, Exs. A, F.)  It did not raise claims of equal protection.  This appeal was exhausted on
16  October 21, 2011.  (*Id.*, Lozano Decl. ¶ 10, Exs. A, D.)   Although this appeal was not
17  exhausted before Tatum filed his original complaint in this action on September 30, 2011,
18  its exhaustion before the filing of the amended complaint on July 20, 2012, satisfies the
19  PLRA's exhaustion requirement.  *See Rhodes v. Robinson*, 621 F.3d 1002, 1006 (9th Cir.
20  2010).

21  In sum, the record shows that Tatum exhausted his claims of deliberate indifference
22  against Buckley (via the first appeal) and Rush (via the fourth).  It also shows that Tatum
23  failed to exhaust his administrative remedies regarding claims of deliberate indifference
24  for defendants Perez, Alkire, and Smith.  Although Tatum mentioned Smith and Perez  in
25  his fourth appeal,  he claimed that neither was a member of the ICC committee on June 9,
26  2011 and made no allegation that either defendant violated his rights.  (MTD, Townsend
27  Decl., Ex. F.)  Defendant Alkire, Chief of Classification Services for the CDCR, is not
28  mentioned  in any of the four appeals.  (*Id*., ¶¶ 10–13.)   Tatum did not exhaust any equal

United States District Court
Northern District of California

1  protection claims.  He failed to raise any issues of equal protection or to name any
2  similarly-situated prisoners who were granted a transfer by any defendant in his
3  administrative appeals.

4  Because Tatum has exhausted his administrative remedies regarding claims of
5  deliberate indifference for defendants Buckley and Rush, defendants' motion to dismiss
6  those claims against those defendants is DENIED.  Because Tatum has failed to exhaust
7  his administrative remedies regarding claims of deliberate indifference for defendants
8  Perez, Alkire, and Smith, defendants' motion to dismiss those claims against those
9  defendants is GRANTED, and those claims are DISMISSED.  Because Tatum failed to
10 exhaust his administrative remedies on any equal protection claims, defendants' motion to
11 dismiss all of his equal protection claims is GRANTED, and those claims are
12 DISMISSED.

### C. Motion for Summary Judgment

Defendants moved for summary judgment on Tatum's claims that defendants Buckley and Rush were deliberately indifferent to his safety, in violation of the Eighth Amendment.  Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an

absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The Court is concerned only with disputes over material facts and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to a judgment as a matter of law." *Celotex*, 477 U.S. at 323 (internal quotations omitted).

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety of prisoners, a requirement that includes the duty to protect inmates from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). The failure of prison officials to protect inmates from such attacks or from dangerous conditions at the prison violates the Eighth Amendment when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious; and (2) the prison official is, subjectively, deliberately indifferent to inmate safety. *Id.* at 834. A prison official is not liable for a violation of the Eighth Amendment unless the standard for criminal recklessness is met, i.e., the official knows of and disregards an excessive risk to inmate health or safety by failing to take reasonable steps to abate it. *Id.* at 837.

A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault." *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Before being required to take action he must, however, have more than a "mere suspicion" that an attack will occur. *See id.* While a prisoner's failure to give prison officials advance notice of a specific threat is not dispositive with respect to whether prison officials acted with deliberate indifference to the prisoner's safety needs, deliberate indifference will not

be found where there is no other evidence in the record showing that the defendants knew of facts supporting an inference and drew the inference of substantial risk to the prisoner. *Labatad v. Corr. Corp. Of Am.*, 714 F.3d 1155, 1161 (9th Cir. 2013).

### 1. **Buckley**

Tatum claims that defendant Buckley violated his Eighth Amendment rights by being deliberately indifferent to his safety in denying his request for transfer to another prison, against the recommendation of the ICC dated June 2, 2010, and in transferring him back to general population.

The undisputed facts in this case do not show a genuine dispute as to any material fact relating to claims of deliberate indifference. When deciding to reject Tatum's transfer request, Buckley took notice that the recommendation by the ICC stated that he simply wanted a transfer to a prison "down south," and did not make that request with any safety justification in mind. (MTD, Buckley Decl. ¶ 7.) Furthermore, the ICC recommendation clearly states that the committee determined that Tatum "no longer poses an unacceptable risk to the safety of others and institutional security, and can be released by to the [general population] at this time." (Am. Compl., Ex. A.) In determining that it was safe to return Tatum to general population, Buckley noted that none of the inmates on his enemies list were being held in general population at that time. (MTD, Buckley Decl. ¶ 8.) The two incidents with KUMI members occurred after Buckley issued his decision. The undisputed facts do not support an inference that there would be a substantial risk to Tatum in releasing him to general population, nor do they show that defendant Buckley actually drew such an inference. Accordingly, defendants' motion for summary judgment on this claim is GRANTED.

### 2. **Rush**

Tatum contends that defendant Rush was deliberately indifferent when he recommended plaintiff be transferred back to general population on June 9, 2011. Rush dissented from an earlier recommendation of the ICC to transfer Tatum to another prison. When that recommendation was not endorsed, there was another ICC meeting on June 9,

2011. Rush was not a member of this second committee which ultimately rescinded the recommendation to transfer Tatum, though he did attend the hearing to present his findings and make his recommendation.

In preparing for the June 9 hearing, Rush interviewed Tatum, who refused to identify the inmates he claimed threatened him. (MTD, Rush Decl. ¶ 9.) Rush also reviewed Tatum's file, which noted no potential enemy concerns in general population. (*Id.*) Tatum claims that, prior to the June 9 meeting, Rush explained to him that prison officials had received confidential information that Tatum was involved in smuggling cell phones into the prison and then stealing the profits meant for a prison gang. (Am. Compl. at 8.) Rush allegedly counseled Tatum that he could no longer "run from the problems he created and expect prison staff to protect him." (*Id.* at 9.)

Assuming as true that Rush told Tatum what Tatum alleges, this does not raise a material issue of disputed fact to show that Rush was deliberately indifferent in recommending that Tatum be returned to the general population. Rush was not a decision-maker in the ICC. It is undisputed that he interviewed Tatum before he made a recommendation to the ICC and that Tatum refused to identify the inmates he claimed had threatened him. It is also undisputed that Rush reviewed Tatum's file prior to the ICC hearing and that the file noted no potential enemy concerns in the general population. Following Rush's recommendation, the ICC made its own determination to return Tatum to the general population. Given that Rush's recommendation was based on his interviews with Tatum and review of his files, (*Id.* ¶¶ 6, 9), and given the lack of current enemy concerns noted in Tatum's file and Tatum's refusal to provide names of anyone who he claimed had threatened him, Rush's recommendation was hardly criminally reckless. It was not unreasonable to recommend that there would be no significant risk upon Tatum's return to a general population that holds no identifiable enemies. The undisputed facts on the record do not show a genuine dispute as to any material fact relating to claims of deliberate indifference, and defendants' motion for summary judgment on this claim is GRANTED.

**E.     Motions**

Defendants' motion to stay discovery pending resolution of the present motions (Docket No. 79) is DENIED as moot.

Tatum's motion for a preliminary injunction (Docket No. 49) is DENIED as moot. His motion for sanctions against Rush (Docket No. 86) is also DENIED. He asserts that Rush perjured himself when he stated in a filing that he was not a member of the June 9, 2011 ICC. In the filing, Rush stated that he was not a formal committee member at the meeting in question, but was open about his participation in the meeting. (MTD, Rush Decl. ¶ 9.) Rush is not listed as a committee member on the June 9, 2011 ICC meeting form (Am. Compl., Ex. K), and his declaration that he was not an official member of that ICC meeting, yet took part in the meeting, is not perjury.

Tatum's motion for an extension of time to obtain copies of documents (Docket No. 87) is DENIED as moot.

# CONCLUSION

Based on the foregoing, defendants' motion to dismiss (Docket No. 67) is GRANTED in part, and DENIED in part. All Eighth Amendment claims against defendants Perez, Alkire, and Smith are DISMISSED, and all equal protection claims against all defendants are also DISMISSED. Defendants' motion for summary judgment (Docket No. 67) is GRANTED in favor of Buckley and Rush.

The Clerk shall terminate Docket Nos. 49, 67, 79, 86 and 87, enter judgment in favor of all defendants as to all claims, and close the file.

**IT IS SO ORDERED.**

**Dated:**  November 21, 2013

_____
WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA


IRVIN TATUM,

        Plaintiff,

  v.

C. BUCKLEY et al,

        Defendant.

Case Number: CV11-04864 WHO

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 21, 2013, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the person hereinafter listed, by depositing said envelope in the U.S. Mail.


Irvin T. Tatum E-20208
Pelican Bay State Prison ASU#131
P.O. Box 7500
Crescent City, CA 95532


Dated: November 21, 2013

Richard W. Wieking, Clerk
By: Jean Davis, Deputy Clerk